**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Keith Dunbar,<br>Plaintiff,<br>v.<br>Federal Express Corporation,<br>Defendant. | ) | Case No. 2:25-cv-03378-RMG-MGB<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Keith Dunbar ("Plaintiff"), proceeding *pro se*, originally brought this employment action alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA"). (Dkt. No. 1.) On August 20, 2025, Plaintiff filed a Second Amended Complaint limiting his claims to retaliation and discrimination in violation of the ADA, and wrongful termination. (Dkt. No. 82.) This case is now before the Court upon Defendant's Motion for Summary Judgment (Dkt. No. 132). Under Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's summary judgment motion (Dkt. No. 132) should be **GRANTED**.

## FACTUAL SUMMARY

This cases arises from Plaintiff's prior employment with Defendant. (*See generally* Dkt. No. 82.) More specifically, Plaintiff was hired by Defendant as a part-time package handler in May of 2024. (Dkt. No. 132-1 at 2; Dkt. No. 133 at 4.) On or around June 10, 2024, Plaintiff suffered a work-related injury that limited his ability to use his wrist.[1] (Dkt. No. 133 at 14–16.) After

[1] Defendant contends that Plaintiff injured himself while attempting to break a jam in a conveyor belt, in violation of Defendant's Employee Safety Guidelines. (Dkt. No. 132 at 2.) Defendant therefore issued a disciplinary action regarding this

receiving treatment for his injury, Plaintiff returned to work with a "light duty" restriction. (*Id.*) His "light duty" assignment involved directing trucks returning to Defendant's facility. (*Id*. at 24.) This role required him to work outside. (*Id*. at 24–25.) On July 19, 2024, Plaintiff did not want to work outside because it was thundering, lightning, and raining. (*Id*. at 25.) Although he was given permission to go home for the day, Plaintiff claims that a co-worker, Janet Gore, tried to force him to work outside. (*Id*. at 25, 27–29, 36.) Plaintiff and Gore engaged in a verbal altercation.[2] (*Id*. at 22–23; *see generally* Dkt. No. 132-8.) They both reported the incident, and it was investigated by Defendant's Human Resources Department. (Dkt. No. 133 at 19; *see generally* Dkt. No. 132-8.) Plaintiff and Gore were placed on paid suspension during the investigation. (Dkt. No. 132-8 at 2; Dkt. No. 133 at 31.) Gore was terminated for her role in the incident. (Dkt. No. 132-2 at 4.)

Following its investigation into the matter, Defendant's Human Resources Department concluded that Plaintiff violated Defendant's "Acceptable Conduct" policy. (*See generally* Dkt. Nos. 132-8, 132-9.) Plaintiff was notified by his manager on August 23, 2024 that he would be terminated. (Dkt. No. 133 at 5–7.)

## PROCEDURAL HISTORY

Plaintiff filed his original Complaint in this Court on April 22, 2025. (Dkt. No. 1.) On June 20, 2025, Plaintiff filed a Motion to Correct Defendant's Name (Dkt. No. 42) and an Amended Complaint (Dkt. No. 43). In the Cover Letter attached to his Amended Complaint, Plaintiff explained that the enclosed "Corrected First Amended Complaint . . . reflects the complaint that was originally served on the Defendant on June 4, 2025, and is being submitted to ensure that the

---

violation. (Dkt. No. 132-4.) Plaintiff does not agree that he violated Defendant's safety policy, and he appealed the disciplinary action. (Dkt. Nos. 132-6, 132-7, 133.) The disciplinary action was upheld. (Dkt. No. 132-6.) The letter upholding this decision, issued on July 23, 2024, states that the Vice President of Operations "uph[e]ld [Plaintiff's] termination" as a disciplinary action for this purported policy violation. (*Id*. at 4.) However, it is undisputed that Plaintiff was placed on paid suspension from approximately July 22, 2024 through August 23, 2024 due to a verbal argument with a co-worker and, as such, could not have been terminated on July 23, 2024. (Dkt. No. 132-8 at 2; Dkt. No. 132-9 at 2; Dkt. No. 132-11 at 2; Dkt. No. 133 at 31.) Thus, the statement in the letter appears to be a typographical error. (*See* Dkt. No. 146 at 3.)

[2] The parties seem to disagree as to exactly what happened during this argument.

Court's record aligns exactly with the served version." (Dkt. No. 43-1 at 1.) Plaintiff further requested that the "Corrected Complaint supersede[] the version currently filed [on the docket]." (*Id.*) On that same day, the Court entered a Text Order confirming that the Court would permit Plaintiff's Amended Complaint to replace and supersede his original Complaint, in accordance with Federal Rule of Civil Procedure 15(a). (Dkt. No. 44.) The Court also noted that the Clerk of Court had updated Defendant's name on the docket to reflect the name identified in the Amended Complaint. (*Id.*) Defendant filed an Answer to Plaintiff's Amended Complaint on July 17, 2025. (Dkt. No. 52.)

The Court entered a Scheduling Order in this case on July 18, 2025. (Dkt. No. 53.) Pursuant to the Scheduling Order, August 18, 2025 was the deadline to file motions to amend the pleadings. (*Id.*) Plaintiff filed a Motion to Amend on July 24, 2025. (Dkt. No. 60.)

In his Motion to Amend, Plaintiff asked the Court for permission to amend his original Complaint to clarify and strengthen the factual basis for his claims, and to "correct the Defendant's legal name." (Dkt. No. 60 at 1.) Because Plaintiff filed his request to further amend his pleading within the time permitted under the operative Scheduling Order and because he appeared to have good cause to amend, the Court granted Plaintiff's motion. (Dkt. No. 77.) However, Plaintiff did not attach a proposed Second Amended Complaint to his Motion to Amend. (Dkt. No. 60.) Instead, Plaintiff submitted various "supporting materials" in connection with his Motion to Amend, which the undersigned assumed he intended to use as evidence to support his claims. Accordingly, in an effort to avoid confusion and to ensure that Plaintiff had the opportunity to fully set forth all claims he intended to bring against Defendant, the undersigned granted Plaintiff twenty-one (21) days to file a Second Amended Complaint, which he did on August 20, 2025. (Dkt. Nos. 77, 82.) The Second Amended Complaint brings claims against Defendant for discrimination and retaliation in violation of the ADA, and wrongful termination. (Dkt. No. 82.)

Defendant then filed the instant Motion for Summary Judgment on April 17, 2026. (Dkt. No. 132.) The next day, the Court entered an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 134.) Plaintiff responded in opposition to Defendant's motion on April 20, 2026. (Dkt. No. 137.) After requesting and receiving an extension of time, Defendant replied to Plaintiff's response on May 5, 2026. (Dkt. No. 146.) Plaintiff then filed a motion asking for leave to file a limited sur-reply to Defendant's reply to his response in opposition, which the Court granted. (Dkt. Nos. 147, 148.) Plaintiff filed his sur-reply on May 14, 2026.[3] (Dkt. No. 151.) Accordingly, the motion before the Court has been fully briefed and is ripe for disposition.

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact, and the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In ruling on a motion for summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*,

[3] In his sur-reply, Plaintiff takes issue with the "Workday" record (Dkt. No. 146-1) Defendant filed as an exhibit to its reply. (*See generally* Dkt. No. 151.) The undersigned notes that this exhibit was not pertinent to the recommendations set forth herein and therefore declines to address Plaintiff's arguments as to why the exhibit should not be considered by the Court.

526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "Although the Court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson*, 477 U.S. at 252; *Stone v. Liberty Mutual Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff brought this action *pro se*, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## **DISCUSSION**[4]

As noted, Plaintiff's Second Amended Complaint brings claims for retaliation, failure to accommodate, and wrongful termination[5] in violation of the ADA.[6] (S*ee generally* Dkt. No. 82.)[7] Defendant asserts that it is entitled to summary judgment on each of these claims. (Dkt. No.

---

[4] To the extent Plaintiff attempts to raise new claims in his briefings, the undersigned notes that this is impermissible. *See United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider issue first raised in reply brief); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs" (internal citations omitted)); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (explaining that "an argument raised for the first time in a reply brief or memorandum will not be considered"). As such, the undersigned has considered only those claims raised in Plaintiff's Second Amended Complaint when drafting this Report and Recommendation.

[5] Although the Second Amended Complaint has not specified a statute under which Plaintiff brings his wrongful termination claim, the undersigned has liberally construed this claim as arising under the ADA, in an abundance of caution and in light of Plaintiff's *pro se* status. (*See generally* Dkt. No. 82.)

[6] For purposes of this Report and Recommendation, the undersigned has assumed, without deciding, that Plaintiff's wrist impairment rendered him disabled.

[7] To the extent Plaintiff attempts to bring a claim for "violation of [Defendant's] internal policies and due process," this claim is inappropriate and need not be addressed in detail. Defendant here is a private employer against whom a due process claim is inappropriate. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 278 (1993) (rights arising under Due Process Clause are rights protected only against official, not private, encroachment). Regardless, a defendant's violation of its own internal policies cannot support a valid due process claim. *See, e.g.*, *Nails v. Priv. Off. V.A. Charleston, S.C.*, No. 2:24-cv-06405-RMG-MGB, 2025 WL 2261223, at *3 (D.S.C. July 21, 2025) ("[A]n agency's purported violation of its own

132.) By contrast, Plaintiff contends that genuine issues of material fact exist, and that summary judgment is inappropriate. (Dkt. No. 137.) For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's summary judgment motion (Dkt. No. 132) should be **GRANTED IN FULL**.

## I. Retaliation

The ADA prohibits retaliation against an employee "because [that] individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 12203(a).

Plaintiff may establish this claim through "sufficient direct and indirect evidence of retaliation," or under the burden-shifting framework. *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015); *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001). Where, as here, a plaintiff provides only circumstantial evidence in support of his claims, the Court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). Under this framework, Plaintiff must first establish a *prima facie* case of retaliation. *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006).

A *prima facie* showing of retaliation in violation of the ADA requires that Plaintiff engaged in protected activity and was retaliated against because of it. *Jacobs*, 780 F.3d at 577. Plaintiff must then show that Defendant's proffered reason for terminating him was pretextual.

internal policies does not, without more, create a cognizable private right of action . . . ."), *adopted*, 2025 WL 2256136 (D.S.C. Aug. 7, 2025); *Cooper v. Mursier*, No. 2:14-cv-4368-TMC-MGB, 2016 WL 751016, at *4 (D.S.C. Feb. 1, 2016) (noting allegation that a defendant did not follow its own "internal policies" failed to state a plausible claim for a constitutional deprivation of due process), *adopted*, 2016 WL 741295 (D.S.C. Feb. 25, 2016). Plaintiff does not specify another legal basis for this claim. (*See generally* Dkt. No. 82.) To the extent Plaintiff attempts to use the allegation that Defendant violated its own internal policies to bolster his discrimination claims, a defendant's failure to follow its own internal policies does not, on its own, show discriminatory animus. *See Linton v. Carter*, No. 1:14-cv-1520, 2015 WL 4937447, at *4 (E.D. Va. Aug. 18, 2015) (explaining that even if an employer fails to follow its own internal procedures, such acts do not necessarily suggest that the employer was motivated by illegal discriminatory intent).

*Id*. Defendant contends that Plaintiff cannot make the requisite *prima facie* showing because the record contains no evidence that Plaintiff engaged in protected activity. (Dkt. No. 132 at 6–7.)

Upon careful review, the undersigned agrees. Plaintiff has not produced any evidence showing that he reported or complained of disability discrimination, failure to accommodate, or any other violation of the ADA. Although Plaintiff protested "unsafe" working conditions, the record is devoid of evidence suggesting that he connected his criticisms of those conditions to his alleged disability. *See Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015) ("[W]hen employees make complaints . . . without connecting the employment practices to their disabilities, these complaints do not constitute protected activity."). In fact, Plaintiff's criticisms were based on conditions that he considered "unsafe" regardless of his disability. (*See* Dkt. No. 133 at 29–35, Plaintiff's testimony indicating that he considered working outside in rain, thunder, and lightning unsafe because "[i]t's metal everywhere.")

Further, to the extent Plaintiff contends that he engaged in protected activity by filing a workers' compensation claim, this argument is misguided, as workers' compensation claims are not considered protected activity under the ADA. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (finding ADA retaliation claim based on worker's compensation request failed because "filing a workers' compensation claim is not something that is covered by the ADA"); *see also Britt v. DeJoy*, No. 20-1620, 2022 WL 4280495, at *4 (4th Cir. Sept. 14, 2022) ("[T]his Court has previously held that '[f]iling a workers' compensation claim is not something that is covered by the ADA' and therefore is not a protected act under the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a)." (quoting *Reynolds*, 701 F.3d at 154)).

Even assuming, *arguendo*, that Plaintiff could satisfy the necessary elements of his *prima facie* case, his ADA retaliation claim still fails because Defendant has set forth a legitimate, nondiscriminatory and nonretaliatory reason for terminating him. Defendant has

provided the Court with evidence showing Plaintiff was terminated because of his behavior during a verbal altercation with a co-worker, Janet Gore, which violated Defendant's "Acceptable Conduct" and "Workplace Violence" policies. (*See generally* Dkt. Nos. 132-5, 132-8, 132-9.) Plaintiff has provided no admissible evidence indicating that this reason is pretextual.[8] *See Vaden v. Enochs*, No. 7:21-cv-00155, 2022 WL 520804, at *4 (W.D. Va. Feb. 22, 2022) ("On summary judgment, [Plaintiff] cannot rest on unsupported statements in his brief to create a genuine dispute of fact.").

Instead, Plaintiff focuses on his own subjective belief that his termination was unfair.[9] However, the fairness of Plaintiff's termination is not relevant to the pretext inquiry. *See, e.g.*, *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 421 (D.S.C. 2014) (noting that "[an employer's] failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext"). Federal discrimination statutes are not vehicles for "substituting the judgment of a court for that of the employer." *Thompson v. Rock Hill Sch. Dist. III*, No. 0:13-cv-1889-JFA, 2014 WL 5369775, at *12 (D.S.C. Oct. 22, 2014) (citing *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995)); *see also Malghan v. Evans*, 118 F. App'x 731 (4th Cir. 2004) ("[T]he law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered,

---

8 Although Plaintiff claims to proffer evidence of pretext, such evidence actually corroborates Defendant's purported reason for termination. (*See, e.g.*, Dkt, No. 137-2 at 1, indicating investigation of Plaintiff regarding workplace violence dispute determined Plaintiff violated policy and his file was "sent to HR for termination review"; Dkt. No. 137-8 at 2, stating Defendant's notes indicate Plaintiff was terminated for workplace violence.) Further, to the extent Plaintiff argues that "Defendant's shifting reliance on different policy provisions—including an initial focus on Policy 019 and subsequent reliance on Policy 010" shows pretext, this argument is unfounded. (Dkt. No. 141 at 2.) Indeed, the "Acceptable Conduct" policy—Policy-010—covers violations of the "Workplace Violence" policy—Policy-019. (Dkt. No. 132-5 at 5.)

9 A bit confusingly, Plaintiff's response in opposition to Defendant's summary judgment motion (Dkt. No. 137) argues that a genuine issue of material fact exists as to whether his termination was "finalized." However, throughout the record, Plaintiff appears to concede that he was terminated. (*See generally* Dkt. Nos. 82, 132-11, 133.) Plaintiff cannot use his own self-serving, contradictory assertions to establish a genuine issue of material fact. *See Wilson v. Wal-Mart, Inc.*, No. 3:15-cv-1157-JFA, 2016 WL 3086929, at *3 (D.S.C. June 2, 2016) ("Uncorroborated and self-serving testimony cannot give rise to a genuine factual dispute."). What is more, taking Plaintiff's argument that he was not terminated as true would significantly undermine his ADA claims, as he alleges no other retaliatory acts and a valid wrongful termination claim requires discharge. (*See generally* Dkt. No. 82.)

as long as they are nondiscriminatory [and nonretaliatory].")

Thus, even if Defendant misinterpreted Plaintiff's conduct, it is not this Court's place to decide whether Defendant's reasoning "was wise, fair, or even correct, ultimately, so long as it truly was the reason for [Plaintiff's] termination." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). While Plaintiff may not agree with Defendant's interpretation of his conduct during the verbal altercation, the record confirms that Defendant's conclusion was not an unreasonable one, even when considering the facts in the light most favorable to Plaintiff. (Dkt. Nos. 132-5, 132-8, 132-9, 132-10.)

Ultimately, the record is simply devoid of evidence from which the Court could conclude that Plaintiff was terminated in retaliation for making protected complaints about his disability. As such, Defendant is entitled to summary judgment on Plaintiff's ADA retaliation claim, and Defendant's motion (Dkt. No. 132) should be **GRANTED** as to this claim.

### II. Failure to Accommodate and Wrongful Termination

The ADA further prohibits employers from discriminating against employees on account of disability. 42 U.S.C. § 12112(a)). More specifically, Title I of the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.*; *see also* 29 C.F.R. § 1630.9(a) ("It is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.").

To make a *prima facie* showing for his attempted failure to accommodate claim, Plaintiff must demonstrate that: (1) he was disabled; (2) Defendant had notice of his disability; (3) he could perform the essential functions of his position with a reasonable accommodation; and (4) Defendant refused to make such accommodation. *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 178 (4th Cir. 2023); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 378 (4th Cir. 2022). Defendant argues that Plaintiff's *prima facie* case of failure to accommodate fails on the third and fourth prongs because Plaintiff never requested a reasonable accommodation. (Dkt. No. 132 at 8.) The undersigned agrees.

Plaintiff testified that his failure to accommodate claim is based solely on Defendant attempting to require him to work in thunder, lightning, and rain. (Dkt. No. 133 at 42, Plaintiff's testimony stating "This is where you failed to accommodate, when you tried to force me in the rain to work. When . . . you tried to force me in unsafe working conditions," and "You failed to accommodate me when you forced me in the rain. . . . [w]hen you tried to force me in the thunder and lightning . . . .") However, the undisputed record evidence indicates that Defendant did not require Plaintiff to work in the thunder, lightning, and rain, but instead gave him permission to go home. (*Id*. at 21, 29–30, 38.) The record reflects no other basis on which the Court could determine that Defendant failed to accommodate Plaintiff's request for a reasonable accommodation. Because no genuine issue of material fact exists on this point, Defendant's summary judgment motion (Dkt. No. 132) should be **GRANTED** as to this claim, as well.

Turning to Plaintiff's wrongful termination claim, Plaintiff must make a *prima facie* showing that: (1) he was disabled; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations when he was discharged; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Cowgill*, 41 F.4th at 379 (4th Cir. 2022) (citing *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004)). Defendant

contends that Plaintiff cannot make the required *prima facie* showing for his wrongful termination claim because "he was not performing his job at the level that met FedEx's legitimate expectations as evidenced by the incident with Janet Gore," and because "there are no circumstances that raise a reasonable inference that unlawful discrimination has occurred." (Dkt. No. 132 at 9.)

Upon review, the undersigned agrees that Plaintiff cannot establish a *prima facie* case of wrongful termination. First, the record contains no evidence that would allow the Court to draw a reasonable inference of disability discrimination. As explained in Section I above, Plaintiff consistently alleges that his termination was unfair, without providing admissible evidence indicating that it was actually motivated by discriminatory intent. *See Vaden*, 2022 WL 520804, at *4 ("On summary judgment, [Plaintiff] cannot rest on unsupported statements in his brief to create a genuine dispute of fact.").

What is more, Plaintiff has proffered no evidence to suggest that he was meeting Defendant's legitimate expectations at the time of his termination. In fact, Plaintiff does not dispute that he was on paid suspension at the time of his termination due to an altercation with a co-worker. *See Smith v. Renal Treatment Centers-Mid-Atl., Inc.*, No. CV RDB-16-3656, 2018 WL 950018, at *7 (D. Md. Feb. 20, 2018) ("Plaintiff cannot be actively suspended and at the same time maintain that she was meeting her employer's legitimate expectations."), *aff'd sub nom. Smith v. Renal Treatment Centers - Mid-Atl., Inc.*, 736 F. App'x 68 (4th Cir. 2018).

As such, Plaintiff has failed to establish a *prima facie* case of wrongful termination, and Defendant is entitled to summary judgment on this claim. Defendant's summary judgment motion (Dkt. No. 132) should therefore be **GRANTED** in full.[10]

[10] Further, the record contains no evidence to suggest that Defendant's proffered reason for terminating Plaintiff was pretextual, as described in Section I above. Defendant is therefore entitled to summary judgment on his attempted wrongful termination claim for this alternative reason.

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. No. 132) should be **GRANTED**, and Plaintiff's case should be **DISMISSED IN FULL**.

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 10, 2026
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).